The principal questions decided in this cause were, 1st. Whether in an action upon the case against an executor charging an assumpsit of the testator, and on the plea of non-assumpsit by the testator within five years, the repeated promises of the executor, within five years, to pay the debt could be given in evidence so as to take the case out of the statute of limitations; and 2dly. How far a Court may instruct the Jury as to the sufficiency of evidence.
The suit was originally brought in the County Court of Prince George, by the ap-pellees against the appellant, as executor of Daniel Fisher. The declaration contained five counts — 1. Indebitatus assumpsit for goods sold and delivered to the testator; —■2. Quantum valebant for the same; — ■ 3. A count for money lent and advanced, paid, laid out and expended for the testator; — 4. Quantum meruit *for meat, drink, and clothes, furnished testator’s son; — S. Insimul computassent between the jdaintiffs and defendant’s testator. Plea non-assumpsit, by testator, within five years.
On the trial of the cause in the County Court, the plaintiffs gave in evidence an account of goods, &c. furnished the defendant’s testator; and also an account against his son, John Fisher, for goods, &c. and for board and washing while he was under age, and living with the plaintiffs, in their store, at the testator’s request; also a letter from the testator stating his objections to these accounts, and submitting them to the adjustment of Campbell and Wheeler, or their umpire; the deposition of James Campbell proving the settlement of the account after hearing both parties and examining a witness; the last item in which account is a credit for some tobacco, on the 9th of January: Campbell further said, that he did not recollect ever hearing that the testator objected to the settlement, but, on the contrary, he understood he was satisfied with it. The plaintiffs also proceed that John Fisher was the testator’s son, and, whilst under age, lived in their store at his father’s request.
After the above evidence was given by the plaintiffs, the defendant’s counsel moved the Court to instruct the Jury that the testimony of Campbell did not support any one of the counts in the declaration ; but the Court instructed the Jury that it did prove the fifth count: the defendant then moved the Court to instruct the Jury, that as the writ bore date the 10th of February, 1799, and no assumption of the testator since the settlement had been proved, the plaintiffs were barred by the act of limitations; but the Court instructed them that from the whole testimony the plaintiffs were not barred. The defendant next moved the Court to strike out of the account every iiem which bore date more than five years before the testator’s death, (which happened in December, 1794, or January, 1795,) which the Court refused to do. A separate exception was taken to each opinion of the Court. The plaintiffs then further proved that after the death of the testator, and the qualification of his executor, their account was compared with the books of the testator, on which an account, exactly corresponding with theirs, was found: and this being all the evidence, the defendant’s counsel moved the Court to sign the bill of exception, which was done accordingly. There was a verdict and judgment for the plaintiffs, from which an appeal was taken to the District Court of Petersburg, *where the same was reversed, and the cause retained for trial in that Court.
At the trial in the District Court, the plaintiffs, after exhibiting their account against the defendant’s testator, gave in evidence the testimony of James Campbell, who deposed “that some time in November, 1793, at the desire of Col. Daniel Fisher, the defendant’s testator signified in his letter of that date, and agreeable to the subsequent desire of the parties, to wit, the plaintiffs and the said Daniel Fisher, they afterwards met: Duke Wheeler and himself went into an examination and settlement of the account, debit and credit kept by the plaintiffs against John Fisher, and brought into account against the said Daniel Fisher; that the said Wheeler and the deponent did then duly attend to the allegations and proofs of the parties; Daniel Fisher, and Wm. Cole, one of the plaintiffs, being both at times personally present; that he, the deponent, did, some time afterwards, in the course of that season, direct Mr. Cole to state the account, and that at that time and now he thinks the said account as directed to be stated, and the balance, with interest thereon, struck against the said Fisher, was due from the said Fisher to the said Duncan & Turnbull; and that he does not remember that the said Daniel Fisher, in his life-time, ever objected to, or complained of his determination, but the contrary; that he recollects well, hearing that there were other matters of account between the parties; he believes they were agreed as to them; however they were not settled by him; that he adjusted the balance on the particular account between the parties, referred to him about December of the year 1793: that he further recollects giving his opinion, that the said Daniel Fisher had been allowed too small a credit for a particular quantity of tobacco, and that it appears the difference is placed to his credit in the account.” The plaintiffs also gave in evidence a letter written by the defendant’s testator, in which he agreed to refer his dispute with the plaintiffs, to Campbell and Wheeler. They also-offered in evidence the deposition of John Gholson, proving repeated promises of the defendant to discharge the account in question, and the evidence of Walter M’Indoe, that the said account was by him presented *252 to the defendant, who compared it with the books of his testator, and found it to correspond. To the testimony of Gholson, as evidence in this cause, the defendant objected; but the Court being divided in opinion, on the objection, it was permitted to go in evidence. The defendant’s attorney *then moved the Court to cause to be expunged from the said account, every item thereof which appeared to have been due five years before the death of the testator: on which motion the Court were also divided in opinion, inasmuch as the account bore date before the act of Assembly, directing such items to be stricken out — and the said motion failed. The Jury rendered a verdict for the plaintiffs for 3451. 2s. 6d. for which sum the Court gave judgment, and the defendant appealed to this Court.
G. K. Taylor, for the appellant. In the discussion of this question, it will be my duty to contend that the District Court did right in reversing the decision of the County Court, and then that it did as wrong in giving the judgment which it did. Every count in the declaration, is a general money count: but the allegata., and probata, did not correspond. Now I hold it to be a first principle in pleading that if the plaintiff have a special case he ought to declare on it, and not surprise the defendant at the trial by giving evidence of a particular transaction on a general count, (a) There is not a word in the declaration about an award, and yet the reference to Campbell and Wheeler, and their award, were principally relied on at the trial. If it be the object of a declaration to apprize the defendant of the cause of action, is it possible that he could have had any idea of the case from the charge brought against him?
The agreement being the gist of the action should always be declared on.(b) In our case there were only general money counts, and yet an arbitrament was relied on in evidence. That under such general counts you cannot give the special matter in evidence, has not only been decided in England, but by the Courts of our own country, (c) So far the County Court acted erroneously in permitting evidence on the general counts.
In the next point the County Court also erred. Instead of instructing the Jury specifically on the application of the act of limitations, they say, that, under all the circumstances, the act was no bar. Now it is well known that a Court cannot instruct the Jury on a matter of fact, or as to the weight of evidence.
Having demonstrated that the District Court did right in reversing the judgment of the County Court, I proceed to shew that they did wrong in the opinion which they gave.
*Every charge in the declaration is against the defendant on a promise of his testator; and yet all the evidence goes to prove a promise by the defendant himself. All the books lay it down that the plaintiff must make out his title as laid in his declaration, (d) In a case in Salkeld, (e) where the executor brought a suit stating a promise to the testator, he was not permitted to give in evidence a subsequent promise to himself in order to take the case out of the statute of limitations. It appears equally strong and plain, that where an executor is sued, and the plaintiff charges a promise by the testator, he cannot give in evidence a promise by the executor himself. And that such evidence ought not to be admitted, will be more apparent, when it is considered that the defendant could, by no plea, put the fact in issue. He could not have pleaded that he did not assume, because.he was not charged with an assumpsit. He was compelled to answer to the charge as laid in the declaration, (f) Now if the plaintiff, without suggesting a fact, may go into proof of it, and the defendant cannot put his defence in issue by any plea, then the plaintiff is in a better situation than the defendant.
Again, it is an invariable rule of law that an executor, by his own promise, cannot bind the assets of his testator. If he were to give his bond for a debt due from the testator, nobody would think of suing him as executor. Eor the same reason, his promise will not bind the estate of his testator, but his own estate only, (g) In the case of Wheeler v. Collier just cited, it is expressly laid down, that the adminis-tratrix by her assumpsit, had made the debt, due from her intestate, her own, and that judgment should be of her own proper goods. In the other cases, I admit, that the general scope of the decisions have been overturned, because they go to say, that a legacy may be recovered in a Court of Daw. But all those cases affirm, and there is not a dictum to the contrary, that an executor, by his assumpsit, cannot bind the estate of his testator. The District Court, therefore, erred in permitting evidence to go to the Jury which could only have produced a judgment binding on the executor individually, when the charge as laid in the declaration, if supported, would only have bound the estate of the testator. The reason of the law, in declaring that the executor by his own promise cannot bind the estate of his testator, is obvious. If it were not so, a fraudulent executor by combining with creditors, or an improvident one, might ruin any estate. To guard against both those cases, the law has wisely *provided that the promise of an executor shall only bind himself; and for his security, the undertaking must be in writing.
On the next point — the Court were moved to instruct the Jury to expunge all the items of the account, which bore date over five years: the Judges were divided in opinion, because the case arose before the act of Assembly passed, making this the duty of the Court, (h) The true inquiry is, *253 whether the act affects the rights of the parties, or only gives a new remedy. For a century or more it has been the law of this country, that if a man did not bring such action within five years, he was barred. It is true that the defendant might not avail himself of the operation of the act; but the plaintiff brought his action at his peril; now the law directs the Courts to do, what was before the privilege of the defendant. How does this affect the rights of the plaintiff, when his remedy was gone before? This distinction brings the case witfiin the reasoning of JUDGE ROANE in Gaskins v. The Commonwealth, (a) The uniform practice has been, where rights are not affected and only a new remedy given, to permit the law to operate upon the case.
Hay, for the appellees, observed, that it always gave him serious concern to reflect upon the prospect of the first principles of moral obligation being sacrificed to the forms of law.
As to the judgments — that of the District Court was wrong, because it is believed that the promise of an executor to pay cannot be given in evidence to .support a declaration charging a promise by the testator; but the judgment of the County Court was right. If proof of the promise of the executor had been given in evidence merely to shew the justice of the debt, it would have been proper. In general the promise of an executor may be relied on as proof of the existence of the debt: but here, unfortunately it was introduced to take the case out of the statute of limitations.
But we are told that whenever the title of the plaintiff depends upon a special contract, he must state the contract in his declaration. Agreed: but, in this case there was no special contract. The testator of the appellant had an account with the ap-pellees for a larger sum, and in that account there was one item for advances made to his son; he doubted whether he ought to pay that sum, but agreed that if Campbell and Wheeler should say it was "'right, he would pay it; on their opinion, he entered the amount in his own books. As to his general account, he stood as any other person having dealings with his merchant, and there was no special contract in relation to his son. After this exposition of facts, where is the necessity of resorting to so much law-learning? Before the law was introduced with respect to special contracts it ought to have been shewn that one existed in this case. There was no more special contract than there would be in a case where a man deals in a store, and differing with his merchant as to the price of a particular article, they agree to refer it to men. The right of the merchant does not arise from the reference, but from his customer’s having purchased the article from him. So, in this case, the claim of Duncan & Turnbull did not arise from the reference to Campbell and Wheeler: their right existed before; and their claim is founded on the moral obligation of Fisher to provide for his son. The reference is merely evidence of the claim; Fisher having only doubted of his obligation to pa}'.
The County Court, says Hr. Taylor, did wrong in instructing the Jury that the act of limitations was no bar. The defendant made a wrong motion, and the Court in overruling it, went, perhaps too far. The Court gave their opinion predicated on facts as stated by the parties: there was no assumption of facts on the part of the Court. It seems rather unfair for the defendant to put the Court in motion by making a wrong application, and then to object to their judgment because they had gone too far. The facts were, that the writ issued in 1799; the testator died in 1794 or 1795, and immediately before his death this item was entered on his books. Now the Court, in saying, that from the whole testimony before them the act of limitations was no bar, only meant to speak in reference to the facts agreed by the parties. There were no facts to be disputed. The plaintiffs had stated facts in their declaration, and the defendant had agreed a case as stated in tne bill of exceptions. The Court never meant to decide facts; they only decided on the facts admitted by the defendant himself. They only say to the defendant, “assuming the facts as you admit them, your act of limitation is no bar.”
On the motion to strike out of the account all items of more than five years standing, the Court refused Lo accede; and they refused on a principle which has been fully ^sanctioned by this Court in Elliot’s executor v. Eyell. (b) Now the Court is asked to apply this law to a case which existed before the law passed. In that case it was expressly decided that the law must act prospectively only. If the law affected the obligation of private contracts it would be unconstitutional: there is no legislative power to pass such a law. But admitting this dangerous doctrine, the present case is completely taken out of the operation of this law, by Fisher’s acknowledging all the items of the account except so far as related to his son ; on the same principle that the slightest acknowledgment will take a case out of the statute of limitations. A creditor is not bound to sue when his debtor will keep a debt alive by repeated promises to pay. It is unnecessary to answer many of the arguments of Mr. Taylor, because we differ so materially as to the facts.
G. K. Taylor, in reply. The cause has been much narrowed by the course which Mr. Hay has thought proper to take. The question is not whether, in strict morality, the defendant ought to have pursued the course he did, but whether the law would bear out the plaintiffs and sustain their judgment.
It having been admitted that the District Court erred, it is only necessary to look into the conduct of the County Court. On that point I see no reason to vary the argument already made. But it is said, by Mr. Hay that there was no special agreement. Is there any question on this point? If there be many circumstances which may be inquired into under a general money count, and one only which requires a special. *254 count, will the Court permit the plaintiff to go into evidence as to that circumstance unless he had introduced it by a special count? Certainly not. The only inquiry then is, whether this transaction relating to the item on account of Fisher’s son, was a special agreement or not. Did Fisher acknowledge that he owed that sum? No. On the contrary, they referred it to Campbell and Wheeler. If this special circumstance had been stated, the executor might have shewn that the award was not binding. This was not a general promise to pay. How does it appear, that this reference was only evidence of a pre-existing debt? There is no evidence of the debt but what appears from the award of the arbitrators.
The entry on the books of the testator has no effect, because the Court did instruct the Jury that the evidence of Campbell supported the last count in the declaration, before *any other evidence was introduced. This was a distinct point. The last exception taken, was as to proof of the entry on the books. Each exception was separate and distinct; and the question before this Court is, not whether taking all the evidence together the County Court did right, but whether their decision was right on each distinct proposition? It does appear from the decision of the County Court, that under a charge for meat, drink, &c. furnished to the testator’s son, it would he proper to give evidence of an arbitrament !
But it was unfair, says Mr. Hay, to lead the Court into an error, and then object because they had gone too far. Take the facts as stated by the counsel: and whether the Court were deluded by the counsel in giving improper instructions or not, the effect would be the same. No assumpsit, by Daniel Fisher, within five years was proved. The writ was issued in February, 1799; the settlement was made by Campbell in December, 1793, or January, 1794: more than five years and one month. The inquiry is not, whether the counsel led the Court into an error, but whether the Court did right on the facts submitted. . When did the right to sue on the award commence? The moment it was rendered. When was it rendered? In December, 1793, or January, 1794. How then could the Court say that the act of limitations did not run? Admitting the facts to have been improperly stated by counsel, how is the Court warranted in saying, from the facts, the statute of limitation was no bar? If they undertook to decide the facts,' they encroached on the province of the Jury.
As to striking out the items over five years’ standing, it will be recollected that I stated before, if it were to affect the rights of the parties, the law would not apply: but if the remedy only, it would: and I offered reasons why I did not think the act on that subject changed the pre-existing law.
JUDGE TUCKER.
On the trial of this cause in the County Court of Prince George, the plaintiffs gave in evidence an account of goods, &c. furnished the testator, and also an account against his son John, then under age, for goods, &c. and for board and washing while he was with them in their store, at the testator’s request: as also a letter from the testator, stating his objections to those accounts, and submitting himself to the arbitrament of Campbell and Wheeler, or their umpire: the deposition of *James Campbell proving the settlement and adjustment of the account, after hearing both parties, and making some necessary inquiries of a witness; the last article in this account is a credit for nine hogsheads of tobacco, dated January 19, 1794. Campbell further said, that he does not recollect ever hearing that the testator objected to, or complained of the determination, but, on the contrary, he understood he was satisfied and acquiesced in the settlement. They also proved that John Fisher was the testator’s son, and whilst under age lived in the plaintiffs’ store, at the testator’s request.
The declaration contained five counts — -1. For indebitatus assumpsit for goods sold. —2. Quantum valebant for the same. — 3. For money lent, advanced, paid, laid out and expended for testator. — 4. Quantum meruit for meat, drink, and clothes furnished his son. — 5. Insimul computassent between plaintiffs and the testator. Plea non-assumpsit infra quinqué annos.
The plaintiffs having given the above evidence, the defendants moved the Court to instruct the Jury that the testimony of James Campbell did not prove any one of the counts in the declaration : but the Court instructed the Jury that it did prove and support the fifth count: the defendants then moved the Court to instruct the Jury that the writ bears date February 10, 1799, and that no assumpsit of the testator being proved after the settlement, the plaintiff is barred by the act of limitations; but the Court instructed them that from the whole testimony the plaintiffs were not barred. The defendants then moved the Court to strike every item out of the account which bore date more than five years before the testator’s death, which was in December, 1794, or January, 1795, which the Court refused to do. To each of their decisions, an exception was taken — The plaintiffs then further proved that after the death of the testator, and the qualification of the defendants, as executors, they compared the books of their testator with the plaintiff’s account, and found the account to correspond, and this being all the evidence, the defendants moved the Court to sign the bill of exceptions (in which all the above matters are stated) which was done accordingly. There was a verdict and judgment for the plaintiffs — from which there was an appeal to the District Court of Petersburg, where the same was reversed, and the cause retained there for a new trial which was had, and a verdict and judgment there, also, for the plaintiffs, from which there is an appeal *to this Court. I shall consider the exceptions taken in the County Court.
1. The testimony of James Campbell, is objected to as not proving any of the five counts in the declaration. Now that testimony must be taken in conjunction with Daniel Fisher’s letter, and the account exhibited and settled by himself and Mr. Wheeler, after an examination of the items both of debit and credit in the presence of *255 the parties; and so taken, in my opinion was proper evidence to be admitted to prove ■every count in the declaration. For there is a wide distinction between a debt arising' from an award; as where a man has an uncertain claim against another for damages in consequence of a tort — and a debt subsisting before the reference to arbitrators, but made certain and conclusive by their award, as in the present case; where the obligation of the father to pay for the board and clothing of his infant son, whom he had in a special manner procured the plaintiffs to receive into their store, upon the same terms as they had received the son of another friend, was to all intents and purposes as binding upon him before the reference, as after the settlement made by the referees. Daniel Fisher’s own letter states no other objection to their accounts, which had been, as appears from that letter, in other respects settled. There was therefore no ground for the objection to Campbell’s testimony, which was, I think, very properly admitted.
2. The second objection is, that the Court instructed the Jury, that upon the whole testimony the account is not barred by the statute of limitations. If the bill of exceptions had stopped here, and it had not af-terwards appeared that other evidence was offered to the Jury, viz. that since the testator’s death, the executors had compared the account proved by Campbell, with their testator’s books, and found it to correspond therewith, I should have thought this exception fatal. But we are not to garble a bill of exceptions, and to consider each point in it, as if the Jury had been instantly sent from the bar, and had found a verdict accordingly — but we are to take the whole matter therein stated together, and taking this latter piece of testimony with the former; and considering that from the date of the last item in the account to the day of the emanation of the writ, was exactly one month only, over five years; and that the testator lived twelve months, or near it, after the date of that item, the Jury might well presume that entry in the testator’s own books to have been made within the five years, and were warranted also in presuming such an entry, *as an assent lo the justice of the account, and a direction to his executors to pay it. For Jurors are not bound to draw strict conclusions only, from facts, but may and ought to draw such leg-al conclusions from them as may contribute to the advancement of justice. Taking then this last piece of testimony with what had preceded; and considering the Jury as acting under the Court’s instruction upon the whole evidence together, and not piecemeal, I incline to think the objection, which would otherwise have been fatal, is cured.
3. The third exception to the Court’s opinion is, because they did not strike out every item in the account, the date of which was five years previous to the testator’s death, pursuant to the act of 1792, c. 92, s. 56. But that clause relates to ojien accounts, only. It was a necessary and proper provision to guard against the numerous claims which have heretofore been brought against the estate of persons deceased, upon such accounts. But here was evidence of an actual settlement between the parties within one year before his death. I therefore think the Court very properly rejected the motion. And upon the whole, that the judgment of the County Court was substantially right. Consequently that the District Court erred in reversing it — and for that cause the judg-. ment of reversal ought itself to be reversed, and the judgment of the County Court a ¡firmed. —The last judgment of the District Court is unnecessary, under this view of the subject, to be discussed.
JUDGE ROANE.
The issue joined in this cause being upon the plea of non-as-sumpsit by the testator within five years, the admission of Gholson’s testimony proving repeated promises by the executor in the years 1788, and 1789, in order to take the case out of the statute, was clearly erroneous. On this ground alone the judgment of the District Court must be reversed ; and it is unnecessary to decide absolutely upon the other points made by the bill of exceptions in the District Court: I will, however, state my present impressions respecting them.
With respect to the letter of Fisher and the deposition of Campbell, I am not at present prepared to say that they were not admissible under the fifth count in the declaration ; the insimul computassent. The cause of action arose independently of the reference to Campbell and Wheeler, and that reference was only to adjust a disputed item. The parties accounted to-gather, in relation *to that item, but in so doing they agreed to call in third persons to state the account between them. On the authority of a passage in Buller, 129, I think it is not necessary that both the parties should personally account together in order to maintain this action: but the evidence in this case shews that both parties were, at times, present at the settlement, and that Daniel Fisher appeared satisfied therewith. There can be no pre-tence that the defendants could have been surprised with this evidence, because as well the account exhibited in the County Court as that exhibited in the District Court, refer to the item in question as having been settled by Campbell; and it was also proved in the trial in the County Court that an account exactly corresponding therewith was stated on the books of the testator: the defendants were therefore sufficiently apprized that this testimony would be exhibited.
With respect to the last point made in the bill of exceptions, respecting the expunging of all items of more than five years’ standing before the testator’s death, I am not satisfied that the decision in the case of Gaskins v. The Commonwealth,(a) would warrant its being done in the case before us. That limitation cf time had run out, in relation to many of the items in the account prior to the passage of the act, and whereas, before the passage of the act, it depended on the will of the defendant to plead the statute, (a defence often not resorted to,) it became, after this act was passed, imperiously the duty of the Court *256 to expunge the items. This would seem to affect the existing rights of the plaintiffs, and, perhaps, bring this case within the reason of the decision in Elliott’s Executor v. Eyell;(a) upon this point, however, I have formed no conclusive opinion.
The County Court also erred in their judgment. In the trial there, the defendant moved the Court to instruct the Jury, that as the writ bore date the 10th of February, 1799, and, as no assumption by Daniel Fisher was proven after the settlement by Campbell, (which was before the 1st of January, 1794,) the demand was barred by the act of limitations; but the Court instructed the Jury, on the contrary, that, from the whole testimony before them the demand was not barred.
There was no testimony before them which warranted such an opinion. The plaintiffs, it is true, proved that, after the testator’s death, his books were compared with the account and found to correspond, and this is stated, (together with other evidence not pertinent to this point,) to be all the testimony exhibited in the cause; —but *this last testimony certainly does not prove an assumption by the testator within five years from the time of suing the writ, unless the plaintiffs had further proved that this entry was made within the limitation aforesaid. It may have been made, for anything that appears, more than five years before the suing of the writ; and, if the fact be otherwise, it is the fault of the plaintiff that he did not shew itbut, on the contrary, the Court has admitted that no assumption was proven after the settlement by, Campbell. It was proved in the trial before the District Court that the testator had died more than five years before the date of the writ, viz. in January, 1794. It is true that, in the trial before the County Court, (whose judgment I am now examining,) it is stated in the bill of exceptions that this death was proved to have taken place in December, 1794, or January, 1795; but this may possibly be a mistake, and may have arisen from the pro-bat of Daniel Fisher’s will having been previously shewn to have taken place at the last mentioned period, viz. in January, 1795. This is the only ground whereon to reconcile the conflicting opinions of the two Courts as to the point in question. But be this matter as it may, if the entry in the testator’s books is relied on to take the case out of the statute, that entry should have been shewn to have been made, or acknowledged, within five years before the date of the writ.
It is said that the Jury should have been permitted to infer an assumption within five Years, from the mere existence of the entry in Daniel Fisher’s books. While this position is not admitted, because the Jury ought to have had some evidence of an assumption within five years, the County Court certainly erred in undertaking to say, and instruct the Jury, that, from this, or any other evidence in the cause, the demand was not barred.
My opinion, therefore, is that both judgments be reversed.
JUDGE FBEMING.
There can be no doubt, I think, that the District Court erred in permitting evidence to go to the Jury to prove an assumpsit of the executor in an action founded on the assumpsit of his testator ; the assumpsit of the former being no part of the issue between the parties. This seems sufficient error for reversing the judgment of the District Court.
With respect to the judgment of the County Court, it seems to me that the fifth count in the declaration is well ^supported in the evidence, and, therefore, the objection of the defendant’s counsel that the testimony did not maintain a single count is unfounded: nor did the Court err in refusing to expunge every item in the account of more than five years’ standing; because the testator, not long before his death, by his letter of the 16th of November, 1793, acknowledged that he had settled his accounts with the plaintiffs, and complained of no article, except that he thought himself overcharged with the board and other expenses of his son, John Fisher, who had lived in the store of the plaintiffs, which he submitted to the arbitrament of Messrs. Campbell and Wheeler, or their umpire. But it appears to "me that the County Court erred in having instructed the Jury, that, “from the whole testimony before them, the demand of the plaintiffs was not barred by the act of limitationswhich I conceive to have been an improper interference, and an infringement on the privileges of the Jury, whose right it was to judge of the sufficiency or insufficiency of the evidence adduced to establish any fact or facts in issue before them; the province of the Court being to see that all proper evidence offered (and none other) be submitted to their consideration ; without saying what effect such evidence ought to have in the cause.
The opinion of the Court is that the judgment of the District Court is erroneous in permitting the deposition of John Gholson to go as evidence to the Jury, to prove an assumpsit of John Fisher, one of the executors of Daniel Fisher; because an assumpsit of an executor cannot be given in evidence on the trial of an issue on the assumpsit of this testator within five years.
The judgment is therefore to be reversed and annulled, and this Court proceeding to' give such judgment as the said District Court ought to have given, a majority of the Court is of opinion that the County Court erred in instructing the Jury, that, “from the whole testimony before them the demand of the appellees was not barred by the act of limitationsas the sufficiency of the evidence ought to have been left wholly to the consideration of the Jury.
The judgment of the County Court is also to be reversed with costs, and the cause remanded to the said District Court, for a new trial to be had therein, with directions that no instruction is to be given to the Jury, on such trial, respecting the sufficiency or insufficiency of the evidence.

 1 Esp. N. P. 139, 140.

 lb. 138.

 1 Call, 289, wood v. Luttrell. Jtedgb Pendle-ton'S opinion. 2 Wash. 172, Overton, &c. v. Hudson.

a) l Esp. 140.

e) 1 Salk. 28, Dean v. Crane — reportea more fully in 2 Ld. Raym. 1101, under the name of Green v. Crane.

f) See 1 Esp. 146.

g) Cro. Eliz. 91, Trewinian v. Howell: lb. 406, wheeler v. Collier; Cowp. 284, Atkins & wife v. Hill; lb. 289, Hawkes and wife v. Saunders.

 This act passed in 1792. See Rev. Code, vol. 1, c. 92, s. 66, p. 167.

 1 Call, 196.

 3 Call, 268.

 1 Call, 194.

 3 Call, 268.